**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| IN RE: ) | | |
| ) | CASE NO. | 18-51243 (JAM) |
| JAMES GEORGE VENEZIANO, ) | | |
|     Debtor. ) | CHAPTER | 7 |
| ) | | |
| ) | | |
| VILLAGE MORTGAGE COMPANY, ) | | |
|     Plaintiff, ) | | |
| ) | | |
| vs. ) | | |
| ) | ADV. PRO. NO. | 19-5001 (JAM) |
| JAMES GEORGE VENEZIANO, ) | | |
|     Defendant. ) | ECF NO. | 63 |
| ) | | |

**APPEARANCES**

| | |
|---|---|
| David M. Shaiken, Esq. | *Attorney for the Plaintiff* |
| Shipman, Shaiken & Schwefel, LLC | |
| 433 South Main Street, Suite 319 | |
| West Hartford, Connecticut, 06110 | |
| | |
| Gregory T. Nolan, Esq. | *Attorney for the Defendant* |
| Renzullo & Associates | |
| 65 Elm Street | |
| Winstead, Connecticut, 06098 | |

**MEMORANDUM OF DECISION GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Julie A. Manning, Chief United States Bankruptcy Judge

**I.    Background**

      James George Veneziano (the "Defendant") filed a voluntary petition under Chapter 7,

Title 11, of the United States Code on September 26, 2018. On January 3, 2019, Village

Mortgage Company (the "Plaintiff") commenced this adversary proceeding against the

1

Defendant. The complaint seeks a determination that a debt owed to the Plaintiff by the Defendant is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). On November 12, 2019, the Plaintiff filed a Motion for Summary Judgment (the "Motion for Summary Judgment"). The Defendant filed a Response to the Motion for Summary Judgment (the "Response") on December 16, 2019. On December 17, 2019, the Plaintiff filed a Reply in support of the Motion for Summary Judgment (the "Reply"). For the reasons that follow, the Motion for Summary Judgment is granted.

## II.    Jurisdiction

The United States District Court for the District of Connecticut has jurisdiction over the instant proceeding pursuant to 28 U.S.C. § 1334(b). The Bankruptcy Court derives its authority to hear and determine this matter pursuant to 28 U.S.C. §§ 157(a) and (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

## III.    Undisputed Facts

The Court finds the following undisputed facts relevant to the determination of the Motion for Summary Judgment:[1]

1.    The Defendant and Laurel Caliendo co-founded the Plaintiff in 1996. It was incorporated on July 1, 1998.

---

[1]    The undisputed facts appear in the Motion for Summary Judgment and the exhibits attached thereto, and in the Defendant's Response and the exhibits attached thereto.
   Although there are other asserted undisputed facts, including facts pertaining to a second Superior Court action brought by the Plaintiff against the Defendant, those facts are not material to the determination of the Motion for Summary Judgment now before the Court.

2.     The Plaintiff is a closely held stock corporation. It brokers residential first mortgages which it then sells in the secondary market.

3.     The Defendant was a shareholder, officer, and director of the Plaintiff. He began actively working in the Plaintiff's office in 1999.

4.     Ms. Caliendo was initially the Plaintiff's corporate secretary and became its president in 2000.

5.     In 2010, the Defendant retired from the Plaintiff. In 2012, the Defendant was removed from the board of directors.

6.     In 2012, after the Defendant's removal from the Board, Justin Girolimon, the Plaintiff's then-chief financial officer, began to investigate withdrawals the Defendant had made from corporate funds.

7.     On October 16, 2012, the Plaintiff filed a two-count complaint against the Defendant in Connecticut Superior Court seeking injunctive relief and damages for conversion, statutory theft, and embezzlement. *See Village Mortgage Company v. James Veneziano*, No. LLI-CV-12-6007694-S (the "2012 State Court Action").

8.     The Defendant filed a ten-count counterclaim in the 2012 State Court Action.

9.      The Superior Court held a twelve-day bench trial in the 2012 State Court Action in May 2015, after which the parties filed post-trial briefs. On January 25, 2016, the Superior Court issued a Memorandum of Decision entering judgment in favor of the Plaintiff, awarding damages to the Plaintiff in the amount of $693,395.03, trebled to provide for a total award of $2,080,185.09, and ruling against the Defendant on each of his counterclaims (the "2016 Judgment").

10. The 2016 Judgment finds the following facts and determines the following legal issues[2]:

    a. From its inception, the Plaintiff's business was the brokering of residential first mortgages, which the company would place and then sell in the secondary market.

    b. The Defendant, who held a bachelor's degree in business science and who had experience in banking, was the Plaintiff's vice president and treasurer, positions he held until he retired in 2010. The Defendant directed, supervised, and controlled all the financial aspects of the Plaintiff.

    c. Ms. Caliendo, who did not have an educational background in financial services, and completed two years of college, handled operations, including the processing, closing, funding, delivery, and servicing of the loans, and the selling of the loans on the secondary market.

    d. The split of responsibility between Ms. Caliendo and the Defendant remained consistent until his retirement.

    e. The Defendant admitted at trial that he was a fiduciary of and had a duty to the Plaintiff corporation of undivided loyalty and utmost good faith. In his counterclaim, the Defendant alleged he was employed by the Plaintiff to occupy a position of trust and confidence, and was responsible for, among other things, maintaining the Plaintiff's accounting records. The Defendant further alleged that, as vice president, he had a fiduciary duty to exercise good faith, loyalty, and honesty toward the Plaintiff, to act solely for its benefit in all matters connected

---

[2] In the Defendant's Local Rule 56(a)(2) Statement, attached to his Response, the Defendant "denies" findings contained in the 2016 Judgment, but admits that the 2016 Judgments finds otherwise.

4

    with his employment, and to be candid with the Plaintiff by fully disclosing information which would be useful to it in the protection and promotion of its interest.

f. The Defendant officially retired from the Plaintiff in January of 2010, but stayed actively involved with the company, asserting authority over many aspects of the Plaintiff's financial affairs until his removal from the board of directors in April of 2012.

g. Mr. Girolimon's 2012 investigation into the Defendant's withdrawals from corporate funds resulted in a breakdown of all amounts of corporate funds misappropriated by the Defendant and not repaid. Mr. Girolimon determined that the Defendant misappropriated $1,244,661.02 from the Plaintiff from 2004 through 2014 and $693,395.03 since a period that began three years before the date of the filing of the 2012 State Court Action.

h. The Defendant owed a fiduciary duty to the Plaintiff as its vice president and treasurer, and as a director until his removal from the board of directors in 2012. The Defendant also owed a fiduciary duty to the Plaintiff due to the trust and confidence placed in him by Ms. Caliendo, Mr. Girolimon, and others, his control over the Plaintiff's finances, and the opportunity that such control gave for self-dealing.

i. Until his retirement in early 2010, the Defendant was in a superior position to everyone else at the Plaintiff with respect to financial matters, based upon his experience and expertise. The Defendant directed, supervised, and controlled all the financial aspects of the Plaintiff from its inception until his retirement in early

    2010 and asserted his influence over financial matters until his discharge from the board in 2012.

j. The Defendant was primarily responsible for the books and records of the Plaintiff and was the employee at the Plaintiff responsible for interacting with accountants. The Defendant had the ultimate responsibility for accounting entries and how transactions were characterized in the Plaintiff's records. He was also solely responsible for working with auditors and reviewing audited financial statements. The Plaintiff's board of directors trusted the Defendant to handle the financial affairs of the corporation. Ms. Caliendo also trusted the Defendant to run the financial aspects of the business.

k. The Defendant owed fiduciary duties to the Plaintiff and he breached those duties by engaging in self-dealing by taking the Plaintiff's funds for his own personal use at his sole discretion without any regard to the Plaintiff or its shareholders.

l. The Defendant misappropriated the Plaintiff's corporate funds and defalcated them, and did not pay the funds back to the Plaintiff, despite the Plaintiff's requests that he do so.

m. The Defendant's improper transactions were for his personal use, not for corporate matters, and were not authorized by the Plaintiff's board of directors.

n. The Defendant viewed the funds in the Plaintiff's accounts as his own, and such an attitude and explanation show a complete disregard for corporate formalities, the rights and interests of the Plaintiff and its shareholders, and the Defendant's fiduciary duties.

o. The Defendant acted at his own sole discretion with regard to the Plaintiff's finances, without approval from the board of directors. The Defendant's view that he could authorize and cause advances to himself whenever he wanted without proper approval epitomizes both his misconduct and the mindset he evinced when supervising the financial affairs of the Plaintiff.

p. The Defendant acted without good faith and fair dealing when he manipulated the Plaintiff's accounting records.

q. The Defendant told his son, with regard to Plaintiff's records, that there was "fraud all over those goddamn books."

r. The Defendant manipulated the financial affairs of the Plaintiff in numerous dishonest ways, treated the corporate assets of the Plaintiff as if they were his own, and felt entitled to loot the corporate treasury whenever he wanted to and he did so.

s. The Defendant breached his fiduciary duties to the Plaintiff by stealing, embezzling, and converting funds to his own use.

t. The Defendant was not authorized to abscond with corporate funds.

u. The Defendant looted the corporate treasury to a significant extent for his own personal benefit for at least ten years. Such substantial misappropriations over such a long period of time demonstrates the requisite intent and the requisite wrongful taking of property from its rightful owners, the shareholders, by a preponderance of the evidence.

      v. The defendant was in a special and confidential relationship with the Plaintiff. He, as the financial head of the Plaintiff, was entrusted with the corporate funds. He wrongfully converted a substantial amount of corporate funds to his own use.

11. The 2016 Judgment was affirmed by the Connecticut Appellate Court on July 25, 2017. *See Village Mortgage Company v. James Veneziano*, 175 Conn. App. 59 (2017). The Connecticut Supreme Court denied the Defendant's petition for certification to appeal on November 9, 2017. Therefore, the 2016 Judgment is a final judgment.

## IV. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) is made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56 directs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "Upon consideration of a motion for summary judgment, 'the judge's function . . . is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 746 (Bankr. D. Conn. 2014) (quoting *Anderson*, 477 U.S. at 249). "[T]he court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Mex. Constr. & Paving v. Thompson (In re Thompson)*, 511 B.R. 20, 24 (Bankr. D. Conn. 2014) (quoting *Flaherty v. Lang*, 199 F.3d 607, 615 (2d Cir. 1999)).

At the summary judgment stage, the moving party must show there are no material issues

of fact, and the court must consider all facts in the light most favorable to the non-moving party. *Conn. Ironworkers Emp'rs Ass'n v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 98-99 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1547 (2018) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456, (1992); *Gemmink v. Jay Peak Inc.*, 807 F.3d 46, 48 (2d Cir. 2015)).  Once the moving party has met its burden, the "party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Official Comm. of Unsecured Creditors of Affinity Health Care Mgmt., Inc. v. Wellner (In re Affinity Health Care Mgmt., Inc.)*, 499 B.R. 246, 251 (Bankr. D. Conn. 2013) (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

**V.     Discussion**

### A.  The collateral estoppel effect of the 2016 Judgment

Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza*, 464 U.S. 154, 158 (1984); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66 (2d Cir. 2006).  It is well-established that the doctrine of collateral estoppel applies in bankruptcy proceedings, and that the doctrine may be used to establish the non-dischargeability of a debt.  *In re Snyder*, 939 F.3d 92, 100 (2d Cir. 2019) (citing *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006), *Grogan v. Garner*, 498 U.S. 279, 284 n.11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

"When determining the preclusive effect of a state court judgment, a court must apply the preclusive law of the rendering state." *Thompson*, 511 B.R. at 26 (quoting *Faraday v. Blanchette*, 596 F. Supp. 2d 508, 514 (D. Conn. 2009)).  Under Connecticut law, "collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid

9

and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment." *Cumberland Farms, Inc. v. Town of Groton*, 262 Conn. 45, 58 (2002).  To be subject to collateral estoppel, an issue must have been (1) "fully and fairly litigated," (2) "actually decided," (3) "necessary to the judgment" in the first action, and (4) "identical" to the issue to be decided in the second action. *See Faraday*, 596 F. Supp. 2d 508, 515 (citing *State v. Joyner*, 255 Conn. 477, 490 (2001); *Lighthouse Landings, Inc. v. Conn. Light & Power Co.*, 300 Conn. 325, 343 (2011)).  "As the Supreme Court observed, relitigation will be barred where 'the issues presented by this litigation are in substance the same as those resolved' in the prior case." *Guo Zhong Wu v. Qiao Lin (In re Qiao Lin)*, 576 B.R. 32, 59 (Bankr. E.D.N.Y 2017) (quoting *Montana v. United States*, 440 U.S. 147, 155 (1979)).  Direct identity of issues is not required; substantial identity will suffice.  *Id.*  The party seeking to utilize the doctrine of collateral estoppel bears the burden of proving the elements necessary for its application.  *Automated Salvage Transp. Co. v. Swirsky (In re Swirsky)*, 372 B.R. 551, 562 (Bankr. D. Conn. 2006).

### B.  The Plaintiff's section 523(a)(4) claim

The Plaintiff argues that because the 2016 Judgment is entitled to preclusive effect under the doctrine of collateral estoppel, summary judgment should enter in its favor on the section 523(a)(4) claim, the sole count of the complaint.  The Court agrees.

The aim of the Bankruptcy Code is to provide a fresh start to the "honest but unfortunate" debtor.  *See Cohen v. de la Cruz,* 523 U.S. 213, 217 (1998).  Therefore, "while debts owed at the time of the debtor's bankruptcy filing are generally discharged, the Bankruptcy Code provides 'certain categories of nondischargeable debts that Congress has deemed should survive

10

bankruptcy.'" *In re Tashlitsky*, 492 B.R. 640, 644 (Bankr. E.D.N.Y. 2013) (quoting *Giaimo v. DeTrano (In re DeTrano)*, 326 F.3d 319, 322 (2d Cir. 2003)). One such exception from discharge is a debt arising out of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." *See* 11 U.S.C. § 523(a)(4).

In order to prevail on its section 523(a)(4) claim, the Plaintiff must show that the Defendant's debt arose from defalcation while acting in a fiduciary capacity *or* from embezzlement *or* from larceny. Here, the Plaintiff has proven all three.

1. <u>Defalcation while acting in a fiduciary capacity</u>

To prevail on a claim of non-dischargeability for fiduciary defalcation under section 523(a)(4), a plaintiff must establish two elements: "(i) the existence of a fiduciary relationship between the Plaintiff and Defendant; and (ii) a defalcation committed by the Defendant in the course of that relationship." *In re Fritzson*, 590 B.R. 178, 192 (Bankr. D. Conn. 2018) (quoting *Beaulieu v. Fox (In re Fox)*, 2017 WL 564499, at *3 (Bankr. D. Conn. Feb. 10, 2017); *Mirarchi v. Nofer (In re Nofer)*, 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014)).

The Bankruptcy Code does not define "fiduciary relationship." *See Fritzson*, 590 B.R. at 192. While the definition of fiduciary for the purposes of section 523(a)(4) is generally a matter of federal law, *In re Gucciardo*, 577 B.R. 23, 33 (Bankr. E.D.N.Y. 2017), "its application frequently turns upon obligations attendant to relationships governed by state law," *In re Hayes*, 183 F.3d 162, 166 (2d Cir. 1999). "Under Connecticut law, a fiduciary relationship is a relationship that is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 429 (2d Cir. 1999). "In the seminal cases in which [the Connecticut Supreme Court] has

11

recognized the existence of a fiduciary relationship, the fiduciary was either in a dominant position, thereby creating a relationship of dependency, or was under a specific duty to act for the benefit of another." *In re Hall*, 483 B.R. 281, 292 (Bankr. D. Conn. 2012) (citing *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 38, 761 A.2d 1268 (2000)). A fiduciary relationship will involve "a difference in knowledge or power between fiduciary and principal which ... gives the former a position of ascendancy over the latter." *Hayes*, 183 F.3d at 167. Finally, "[t]he fiduciary relationship must exist prior to the act creating the debt; a trust relationship cannot be said to arise merely from the wrongful conduct itself." *Fritzson*, 590 B.R. at 192 (citation omitted).

If the court determines the defendant was acting in a fiduciary capacity, it next examines whether the defendant's acts constitute defalcation under section 523(a)(4). *See In re Deutsch*, 575 B.R. 590, 600-01 (Bankr. S.D.N.Y. 2017). Defalcation "refers to a failure to produce funds entrusted to a fiduciary." 4 Collier on Bankruptcy ¶ 523.10[1][b], 532-71 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.). For the purposes of section 523(a)(4), defalcation "requires an 'intentional wrong,' 'conduct the fiduciary knows is improper' or 'reckless' conduct." *See In re Watterson*, 524 B.R. 445, 452 (Bankr. E.D.N.Y. 2015) (quoting *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273-74 (2013)); *see also Snyder*, 939 F.3d at 102 ("Defalcation also requires a culpable state of mind, specifically, knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.") (quotation marks and citation omitted). The culpable state of mind requirement is met "if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty." *Snyder*, 939 F.3d at 102 (citing *Bullock*, 569 U.S. at 274).

The elements of a section 523(a)(4) cause of action for defalcation while acting in a fiduciary capacity were established in the 2016 Judgment and are identical to the issues that were litigated in the 2012 State Court Action.

The 2016 Judgment establishes a fiduciary relationship under section 523(a)(4).[3] The Superior Court determined that the Defendant, as vice president, treasurer, and member of the board of directors of a closely-held corporation, owed a fiduciary duty to the Plaintiff and its shareholders. It also found the Defendant owed a fiduciary duty to the Plaintiff based on the trust and confidence placed in the Defendant by the Plaintiff and because of his control over the Plaintiff's finances. The 2016 Judgment establishes that the Defendant directed, supervised, and controlled all financial aspects of the Plaintiff from its inception until his retirement in 2010, and that he asserted his influence over the Plaintiff's finances until his removal from the board of directors in 2012. Therefore, there is no genuine dispute of material fact as to the Defendant serving in a fiduciary capacity with respect to the Plaintiff under section 523(a)(4). *See Gucciardo*, 577 B.R. at 33 (noting that the requisite fiduciary capacity for purposes of section 523(a)(4) can be based on "the duty owed by a corporate officer or director to shareholders") (citing *Nofer*, 514 B.R. at 354); *Fritzson*, 590 B.R. at 193 (finding a fiduciary relationship for

---

[3] In his Response, the Defendant argues that the Plaintiff did not specifically allege a breach of fiduciary duty in the 2012 State Court Action, and so the issue of fiduciary duty was not actually litigated and is not entitled to preclusive effect. A full reading of the 2016 Judgement belies the Defendant's claim. The 2016 Judgment states that the Plaintiff alleged the Defendant owed it a fiduciary duty arising from his management, control, direction and/or supervision of the Plaintiff's financial affairs. While the 2016 Judgment acknowledges that the complaint "could be more artfully pleaded" and "does not specifically allege a breach of fiduciary duty," the Superior Court ultimately concludes that the Plaintiff alleged a breach of fiduciary duty in relation to its allegations of conversion, statutory theft, embezzlement of funds, and misappropriation. The Superior Court also noted that, at trial, the Defendant's counsel admitted that the Plaintiff was alleging a breach of fiduciary duty. Further, the 2016 Judgment determined that, based on the evidence presented at trial and the admissions of the Defendant himself, the Defendant owed a fiduciary duty to the Plaintiff and that he breached that duty.

purposes of section 523(a)(4) when the relationship between the defendant and the plaintiffs was "characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other.").

The 2016 Judgment also establishes defalcation. The Superior Court determined that the Defendant misappropriated $1,244,661.02 from the Plaintiff from 2004 through 2014 and misappropriated $693,395.03 from the Plaintiff since a period beginning three years before the filing of the 2012 State Court Action. "At minimum, 'defalcation,' as that term is used in section 523(a)(4), embraces misappropriation by a fiduciary." *In re Mulligan*, 577 B.R. 6, 17 (Bankr. D. Conn. 2017), *aff'd sub nom. Mulligan v. Jalbert*, No. 3:17-CV-01873 (JAM), 2018 WL 7506431 (D. Conn. May 3, 2018), *aff'd sub nom. In re Mulligan*, 763 F. App'x 70 (2d Cir. 2019) (citing *In re Stone*, 94 B.R. 298, 300 (S.D.N.Y. 1988), *aff'd*, 880 F.2d 1318 (2d Cir. 1989)).

Further, the 2016 Judgment found the Defendant's misappropriations demonstrated his improper conduct and self-dealing. The Superior Court determined the Defendant manipulated the Plaintiff's accounting records and knew of the impropriety of his manipulations. These actions of the Defendant amount to conduct that easily meets section 523(a)(4)'s requirement that the fiduciary "consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty." *See Snyder*, 939 F.3d at 102. Therefore, there is no genuine issue of material fact as to the Defendant's actions constituting defalcation within the meaning of section 523(a)(4).

The fiduciary relationship and defalcation elements of a section 523(a)(4) claim were also actually and necessarily decided in the 2012 State Court Action. In order for the Superior Court to award damages to the Plaintiff on its claims of breach of fiduciary duty, conversion, statutory

14

theft, and embezzlement, it was essential for it to find the Defendant owed a fiduciary duty to Plaintiff and this his actions with respect to that duty were fraudulent or improper. Finally, the 2016 Judgment was fully litigated. It was the result of a twelve-day bench trial during which the Defendant was represented by counsel. The 2016 Judgment was detailed in a 94-page ruling that was affirmed on appeal. Accordingly, under preclusion principles, summary judgment must enter in the Plaintiff's favor on its claim that the Defendant committed fiduciary defalcation under section 523(a)(4).

### 2. Embezzlement

Embezzlement, under section 523(a)(4), "is defined by federal common law as the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *In re Budnick*, 469 B.R. 158, 176 (Bankr. D. Conn. 2012). To establish embezzlement, "the creditor must show by a preponderance of the evidence (1) that the debtor appropriated the subject funds for his own benefit and (2) that he did so with fraudulent intent or deceit." *Id.* (citing *Pierce v. Pyritz,* 200 B.R. 203, 205 (N.D.Ill. 1996)). "Fraudulent intent may be determined from the facts and circumstances surrounding the act." *Id.* (citing *Estate of Stanford Harris v. Dawley (In re Dawley),* 312 B.R. 765, 779 (Bankr. E.D.Pa. 2004), *aff'd,* 2005 WL 2396489 (E.D.Pa. Sept. 28, 2005)).

The elements of a section 523(a)(4) cause of action for embezzlement were established in the 2016 Judgment. The Superior Court found the Defendant liable for embezzlement under Connecticut law. Pursuant to Connecticut law, "[a] person commits embezzlement when he wrongfully appropriates to himself or to another property of another in his care or custody." *Sullivan v. Thorndike*, 104 Conn. App. 297, 306-07 (2007). Embezzlement occurs when "the defendant, by virtue of his agency or other confidential relationship, has been entrusted with the

15

property of another and wrongfully converts it to his own use." *Id.* (citing *State v. Lizzi,* 199 Conn. 462, 467 (1986)).

The facts underlying the finding of embezzlement under Connecticut law also establish embezzlement for section 523(a)(4) purposes. The 2016 Judgment determines the Defendant, as the financial head of the Plaintiff, was entrusted with the corporate funds and that he wrongfully converted a substantial amount of the corporate funds to his own use. Further, the Superior Court found that the Defendant, for at least ten years, significantly looted the Plaintiff's corporate treasury for his own benefit, and that such substantial misappropriations over a long period of time demonstrate the requisite intent and the requisite wrongful taking of property from its rightful owners, the shareholders, by a preponderance of the evidence. Therefore, there is no genuine issue of material fact as to the Defendant's actions constituting embezzlement within the meaning of section 523(a)(4).

The element of embezzlement was both present and fully litigated in the 2012 State Court Action and was actually and necessarily decided in the 2016 Judgment. Further, embezzlement under section 523(a)(4) is in substance identical to the issues determined in the 2012 State Court Action. Accordingly, the application of collateral estoppel is appropriate in this case and warrants a finding that the Plaintiff is entitled to judgment as a matter of law.

### 3. Larceny

Larceny, for purposes of section 523(a)(4), is "the fraudulent and wrongful taking and carrying away of the property of another with the intent to convert the property to the taker's use without the consent of the owner." *Fritzon*, 590 B.R. at 197 (quoting 4 Collier on Bankruptcy ¶ 523.10[2], p. 523-77 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.)). "Section 523(a)(4) and Connecticut law require a showing of 'fraudulent intent' in the wrongful taking of the

16

property of another." *Id.* (quoting *FDIC v. Roberti (In re Roberti)*, 201 B.R. 614, 621 (Bankr. D. Conn. 1996)). As distinguished from embezzlement, the original taking of the property must be unlawful." *Id.* (citing *Farina v. Balzano (In re Balzano)*, 127 B.R. 524, 533 (Bankr. E.D.N.Y. 1991)).

The element of larceny for section 523(a)(4) purposes was established in the 2016 Judgement. The Superior Court found the Defendant liable for statutory theft. Statutory theft under Connecticut General Statues § 52–564 is synonymous with larceny under General Statutes § 53a–119. *Blackwell v. Mahmood*, 120 Conn. App. 690, 700 (2010). "A person commits larceny within the meaning of General Statutes § 53a–119 when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." *Id.*

The Superior Court found that the evidence convincingly demonstrated that the Defendant was not authorized to abscond with the funds of the Plaintiff, but that he did so. This conclusion, along with the findings discussed above, more than support a finding that the Defendant wrongfully took the Plaintiff's property with the requisite fraudulent intent for the purposes of section 523(a)(4). Therefore, there is no genuine issue of material fact as to the Defendant's actions constituting larceny within the meaning of section 523(a)(4).

The element of larceny was both present and fully litigated in the 2012 State Court Action and was actually and necessarily decided in the 2016 Judgment. Further, larceny under section 523(a)(4) is in substance identical to the issues determined in the 2012 State Court Action. Accordingly, the application of collateral estoppel is appropriate in this case and warrants a finding that the Plaintiff is entitled to judgment as a matter of law.

**VI.     Conclusion**

For the reasons set forth above, the essential elements of a cause of action for non-dischargeability under section 523(a)(4) were found by a preponderance of the evidence by the Connecticut Superior Court, and there are no genuine issues of material fact to be tried in this adversary proceeding.  The Plaintiff is therefore entitled to a determination as a matter of law that the debt owed to it by the Defendant is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).  The Defendant's debt to the Plaintiff of $2,080,185.09[4] as found by the Connecticut Superior Court is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).  Accordingly, it is hereby

**ORDERED:** The Plaintiff's Motion for Summary Judgment is GRANTED; and it is further

**ORDERED:** A separate judgment as to the non-dischargeability of the Defendant's debt pursuant to 11 U.S.C. § 523(a)(4) will enter.

Dated at Bridgeport, Connecticut this 27th day of March, 2020.

*Julie A. Manning*
*Chief United States Bankruptcy Judge*
*District of Connecticut*

---

[4] As set forth above, this amount is the product of an award of $693,395.03, trebled pursuant to Connecticut law.  Treble damages imposed under state law can be non-dischargeable under section 523(a)(4).  *See In re Roberti*, 201 B.R. 614, 623-24 (Bankr. D. Conn. 1996); *Mulligan*, 577 B.R. at 22.